DANNER et al. v. UNITED STATES.

No. 8198.

United States District Court
W. D. Missouri, W. D.

Aug. 26, 1953.

Arthur B. Taylor, Independence, Mo., Walter A. Raymond, Kansas City, Mo., for plaintiffs.

Edward L. Scheufler, U. S. Atty., Kenneth C. West, Asst. U. S. Atty., Kansas City, Mo., for defendant.

RIDGE, District Judge.

Plaintiffs herein seek recovery against the United States for damages to real estate caused by onrushing flood waters of the Missouri River on July 15, 1951. The motion is brought pursuant to the Federal Tort Claims Act, 28 U.S.C.A., §§ 1346(b), 2671 et seq.

Plaintiffs' amended complaint alleges that defendant, through its Corps of Engineers, constructed a bridge over U. S. Highway No. 71 Bypass, in the Courtney Bottoms of the Missouri River, north of Independence, Missouri. Extending some nine hundred feet from the north end of this bridge, and as a part of a federal flood control project, defendant's Corps of Engineers also constructed an "approach fill." This fill allegedly lay directly across the flood plane and natural water course of the Missouri River, and was designed to serve as a form of dam or embankment against flood waters. For several days prior to July 15, 1951, flood waters of the Missouri River allegedly became impounded with great force and pressure against the approach fill, finally causing it to weaken and disintegrate. With the collapse of the fill, plaintiffs' respective properties, which lay below the fill, were deluged by the fury of the onrushing water. The damage sustained prompts the instant prayers for relief.

Plaintiffs' instant complaint proceeds on two fundamental theories of recovery. First, liability is asserted, irrespective of negligence, on the ground of absolute liability arising from the unleashing of a major destructive force through obstructing the flow of water in its natural water course. Second, plaintiffs assert defendant was aware of the inadequacy of the approach fill to stem the accelerating force of flood water, as indicated by a request by defendant to the Missouri State Highway Department that it bolster said embankment. When State authorities refused to reinforce the structure, plaintiffs assert that defendant, being aware of the danger, should have assumed the responsibility itself. Plaintiffs claim its failure to do so amounted to actionable negligence.

At this time, defendant moves dismissal of plaintiffs' amended complaint, for failure to state a claim for which relief can be granted.

■ We believe it unnecessary to dwell at length on plaintiffs' first asserted right to relief, i. e., absolute liability. Nor do we undertake to examine or question the law of Missouri on the subject of private or individual liability under analogous circumstances. On July 8, 1953, the Supreme Court of the United States, considering the provisions of the Federal Tort Claims Act, supra, in Dalehite v. United States of America, 346 U.S. 15, 44, 73 S.Ct. 956, 972, expressly ruled as follows:

"Though the findings of specific and general negligence do not support a judgment of government liability, there is yet to be disposed of some slight residue of theory of absolute liability without fault. * * * *the Act* (Federal Tort Claims Act) *does not extend to such situations, though of course well known in tort law generally. It is to be invoked only on a 'negligent or wrongful act or omission' of an employee.* Absolute liability, of course, arises irrespective of how the tortfeasor conducts himself; it is imposed automatically when any damages are sustained as a result of the decision to engage in the dangerous activity. The degree of care used in per-

forming the activity is irrelevant to the application of that doctrine. *But the statute requires a negligent act.* * * *

"Petitioners rely on the word 'wrongful' though as showing that something in addition to negligence is covered. This argument, as we have pointed out, does not override the fact that *the Act does require some brand of misfeasance or nonfeasance, and so could not extend to liability without fault; * * *.*" (Italics ours.)

We believe the above ruling by the United States Supreme Court is decisive of plaintiffs' first contention in support of their complaint made in opposition to the instant motion to dismiss. We proceed, therefore, to a discussion of plaintiffs' second and more serious claim, viz., Government liability for negligence.

28 U.S.C.A. § 1346(b) permits civil actions to be brought against the United States:

"* * * for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

However, 28 U.S.C.A. § 2680(a) protects and excludes the Federal Government from liability for:

"* * * Any claim * * * based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

Unless Missouri law would impose a duty upon a private individual under the circumstances revealed herein, clearly no valid cause of action for negligence is now asserted against the United States. 28 U.S.C.A. § 1346(b). Although our initial inquiry could be directed toward discovering the dictates of state law in this regard,

we believe that regardless of whether a private duty of due care is or is not imposed, in no event could governmental liability attach in view of the undisputed facts before the Court. We may, therefore, assume, without ruling, that the failure of a private individual to bolster an embankment which he has constructed and negligently failed to maintain would give rise to liability if said embankment should give way to flood waters which proceed to deluge and damage lower neighboring land areas. Cf. Vollrath v. Wabash R. Co., D.C.Mo.1946, 65 F.Supp. 766; Clark v. City of Springfield, Mo.App.1951, 241 S.W.2d 100. We further assume, without so ruling, that the overflow or flood waters involved herein were severed from the main current of a natural water course, so as to constitute the overflow "surface water" within the meaning of Missouri law. Cf., Keyton v. Missouri-Kansas-Texas R. R., Mo.App. 1949, 224 S.W.2d 616.

There is considerably more involved in the present action than governmental liability for failure to maintain an approach river fill. The initial construction of this embankment was not an isolated manifestation of federal benevolence, but was, as plaintiffs themselves allege, a part of the Government's flood control project in the Courtney Bottoms of the Missouri River. It should be kept in mind that projects of flood control do not involve specific Congressional mandates imposed on lower federal authority which must be carried out without deviation or policy consideration. Rather, the legislative mode adopted is for Congress to consider plans submitted to it by the Chief of Engineers. When and if a given plan is accepted by Congress, then the method of carrying it out is delegated to and left in the hands of the appropriate federal department of which the Chief of Engineers is a part. Cf. Chap. 15, Title 33, U.S.C.A. Thus, it is difficult to see how the construction and maintenance of the approach fill in question entails the fulfillment of a mandatory duty as contended by plaintiff. Rather, in light of Congressional declaration of policy and the method Congress devised in implementation thereof for flood control, it appears that such act was the manifestation of a purely discretionary function, within the exemption of Section 2680(a), supra. From the facts alleged in the instant complaint, it clearly appears that the actual construction and maintenance of the fill in question was merely a form of implementing the flood control method approved by the Congress and adopted by the Corps of Engineers in the exercise of its discretionary power.

In dismissing a complaint praying recovery against the Government for "carelessly and negligently" installing a Missouri River revertment, resulting in the overflow of plaintiff's property, Judge Duncan stated, in Thomas v. United States, D.C.W.D.Mo. 1949, 81 F.Supp. 881, 882:

"The authority for development of navigation on the Missouri River, as upon other navigable streams, is conferred by the Congress upon the Secretary of War under the supervision of the Chief of Engineers pursuant to plans which have been requested and submitted by the Chief of Engineers to the Congress specifying the projects and the manner in which they are to be carried out and developed. * * *

"It is my view that the details or method of carrying out the plan as submitted to and accepted by the Congress for the development of navigable streams for navigation or for flood control under the direction of the Chief of Engineers of the War Department is a discretionary act within the meaning of Subsection (a) of Section 2680, Title 28 U.S.C.A. which would not render the Government liable for damage resulting from abuse of that discretion or any error or mistake made in carrying it out."

The reasoning in the Thomas case is fully applicable here, and is in fact bolstered by the recent decision of the Supreme Court in the Dalehite case, supra, wherein Justice Reed stated, speaking for the majority of the Court:

"The 'discretion' protected by the section (i. e., Sec. 2680(a)) is not that of the judge—a power to decide within the limits of positive rules of law subject to judicial review. It is the dis-

480

cretion of the executive or the administrator to act according to one's judgment of the best course, a concept of substantial historical ancestry in American law.

\* \* \* \* \* \*

"It is unnecessary to define, apart from this case, precisely where discretion ends. It is enough to hold, as we do, that the *discretionary function or duty* that cannot form a basis for suit under the Tort Claims Act *includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable.*" (Italics ours.)

■ Certainly, the implementation of the Missouri River flood control project involved executive policy determinations by the Corps of Engineers. The establishment of the approach fill in question, regardless of any possible abuse or negligence in maintenance, was no more than a specific manifestation of a discretion exercised on a higher and more fundamental level. This being true, this Court could not sanction or thrust liability upon the Government for misfeasance, or nonfeasance, of a type specifically cloaked and protected by the Federal Tort Claims Act, 28 U.S.C.A. § 2680(a), supra. In re Texas City Disaster Litigation, 5 Cir., 197 F.2d 771; Coates v. U. S., 8 Cir., 181 F.2d 816, 19 A.L.R.2d 840.

■ Although our discussion has largely been directed to the language and interpretation of the Federal Tort Claims Act, there is, we believe, an independent reason which not only militates against, but expressly precludes defendant's instant liability. 33 U.S.C.A. § 702c, reads:

"No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place: \* \* \*."

The full force of this statutory language appears applicable here. See, Clark v. United States of America, D.C.Or.1952, 109 F.Supp. 213.

In view of the foregoing, it is the holding of the Court that: (1) Defendant cannot be held liable on a theory of liability without fault; (2) If under Missouri law private liability for negligence would not attach under the circumstances herein disclosed, there can be no corresponding Government liability as instantly prayed; (3) But even if there would be private liability under Missouri law, in no event can the United States be held liable for the negligent failure to maintain the approach fill in question, since the discharge of a discretionary function is involved; (4) Aside from the Federal Tort Claims Act, federal statute expressly excludes Government liability for damage caused by floods or flood waters at any place.

Defendant's motion to dismiss plaintiffs' amended complaint is sustained. It Is So Ordered.